JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
**JACKSON LEWIS P.C.**
300 South Fourth Street, Suite 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460
Facsimile: (702) 921-2461
Email: joshua.sliker@jacksonlewis.com

*Attorneys for Defendant*
*Tesla Motors, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LYNN THOMPSON,<br><br>Plaintiff,<br><br>vs.<br><br>TESLA MOTORS, INC.; ONQGLOBAL, INC.; DOES 1-50,<br><br>Defendants. | Case No. 3:21-cv-00238-HDM-WGC<br><br>**DEFENDANT TESLA MOTORS, INC.'S MOTION TO STAY CASE PENDING COMPLETION OF ARBITRATION** |

Defendant TESLA MOTORS, INC., by and through its counsel Jackson Lewis P.C., hereby brings the instant Motion to Stay Case Pending Completion of Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, the Court's inherent authority, and § 1360 Preliminary Motions Not Enumerated in Rule 12(b), 5C Fed. Prac. & Proc. Civ. § 1360 (3d ed.) (recognizing that motion to stay pending arbitration has been treated as a responsive pleading and can be brought under the scope of Fed. R. Civ. P. 12(b)). This Motion is based on the following Memorandum of Points and Authorities, all pleadings and documents on file with the Court, and any argument that the Court deems proper.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   **INTRODUCTION**

This matter arises out of work performed by Plaintiff Lynn Thompson as an independent contractor at Defendant Tesla Motors, Inc.'s Gigafactory located in Sparks, Nevada between March and June of 2018. At the time he was retained as an independent contractor, Plaintiff signed a Non-Employment, Non-Disclosure, Invention Assignment, and Arbitration Agreement that obligated him

JACKSON LEWIS P.C
LAS VEGAS

1

to submit any dispute to "final and binding arbitration, and not by way of court or jury trial." Indeed, this process has already been initiated. Plaintiff has asserted various claims against Defendant, which pertain to his contractor relationship and which are currently being litigated in an arbitration proceeding pending with JAMS and presided over by Arbitrator Hon. Carl W. Hoffman (Ret.). The claims at issue in the arbitration arise out of the same operative facts and circumstances as alleged in Plaintiff's Complaint. Accordingly, Defendant respectfully requests that the Court stay this case pending completion of arbitration.

## II.　STATEMENT OF FACTS

### A. The Relationship Between Plaintiff, Tesla and OnQ.

Defendant Tesla Motors, Inc. ("Tesla") is a publicly traded corporation which operates the Gigafactory—a lithium-ion battery and electric vehicle assembly facility—in Sparks, Nevada. In early 2018, Tesla contracted with Defendant OnQGlobal, Inc. ("OnQ") for the provision of certain temporary specialized staffing related to the construction of a new facility at the Gigafactory. On March 22, 2018, Plaintiff and OnQ entered into a Professional Services Agreement (the "PSA") wherein Plaintiff agreed to provide Electrical Superintendent services on the night shift, as an independent contractor, at the Gigafactory for a three-month period. ECF No. 1, ¶ 15; **Exhibit 1**. On March 25, 2018, Plaintiff executed a Non-Employment, Non-Disclosure, Invention Assignment, and Arbitration Agreement in favor of Tesla (the "Tesla Agreement"), which governed the terms and conditions of his independent contractor relationship with Tesla. **Exhibit 2**. Both the PSA and Tesla Agreement contained broad mandatory arbitration clauses. Ex 1, Art. 9; Ex. 2, § 14.

### B. Plaintiff's Lawsuit in the Second Judicial District Court.

On October 29, 2019, Plaintiff filed a lawsuit in the Second Judicial District Court, Washoe County, Nevada, and named Tesla and OnQ as defendants (the "Washoe County Complaint").[1] **Exhibit 3**. Therein, Plaintiff alleged four causes of action: (1) Intentional Interference with Contractual Relations against Tesla; (2) Intentional Interference with Prospective Economic Advantage against Tesla; (3) Breach of Contract against OnQ); and (4) Breach of Implied Covenant

---

[1] Plaintiff filed a First Amended Complaint on January 3, 2020.

of Good Faith and Fair Dealing against OnQ.

Plaintiff alleged that part of his duties at the Gigafactory were to "report suspicious activity, including theft, occurring at the Gigafactory." *Id.* at ¶ 9. Additionally, Plaintiff alleges that although he witnessed and reported the theft of millions of dollars of copper wire, he was instructed to stop investigating further and was threatened with termination if he did not comply. *Id.* at ¶¶ 10-15. Plaintiff further alleged that in June 2018, he witnessed "a few individuals loading copper wire onto a truck," he reported the incident to Tesla Security, and provided a witness statement to the Storey County Sheriff's Department. *Id.* at ¶¶ 21-22. Following this incident, Plaintiff alleged that he was directed not to return to the Gigafactory and that OnQ did not place him to work on any other project. *Id.* at ¶¶ 23-24. Plaintiff also alleged that Tesla awarded contracts to non-union vendors in violation of Nevada state law, and that he was due overtime pay for working in excess of 60 hours per week. *Id.* at ¶¶ 16-17, 51-61.

Subsequently, Tesla and OnQ filed motions to dismiss and compel arbitration which the court granted. *See* **Exhibit 4** (Order re OnQ); **Exhibit 5** (Order re Tesla). Specifically, the court determined that the Tesla and OnQ arbitration agreements were valid and binding, and as such, that Plaintiff was required to arbitrate his claims. The court also ordered that the case was stayed pending the outcome of arbitration. Ex. 5, p. 3.

**C. The Arbitration Proceedings.**

On January 26, 2021, the parties stipulated to arbitration through JAMS and commenced arbitration with Hon. Carl ("Bill") W. Hoffman (Ret.) presiding as arbitrator. On March 3, 2021, Plaintiff filed a Second Amended Complaint (the "Arbitration Complaint"), in which he alleged the following causes of action against Tesla: (1) intentional interference with contractual relations against Tesla; (2) intentional interference with prospective economic advantage against Tesla; (3) breach of contract against OnQ; (4) breach of implied covenant of good faith and fair dealing against OnQ; (5) tortious discharge against public policy against Tesla; (6) breach of contract against Tesla; (7) breach of implied covenant of good faith and fair dealing against Tesla; and (8) misclassification as an independent contractor and wage and hour claims against Tesla and OnQ. **Exhibit 6**. Despite

JACKSON LEWIS P.C
LAS VEGAS

3

the addition of four additional claims, the factual allegations offered in support thereof were virtually identical to the Washoe County Complaint. *Compare* ¶¶ 9-26, Ex. 6 *with* ¶¶ 8-24, Ex. 3; *see also* ¶¶ 28-79, Ex. 6; ¶¶ 25-68, Ex. 3.

The parties have engaged in robust discovery over the last six months including exchanging voluminous witness and document disclosure, propounding and responding to written discovery requests, and taking numerous depositions. Discovery is scheduled to close on October 18, 2021. **Exhibit 7**. Dispositive motions are due on November 17, 2021. *Id.* The arbitration hearing will take place on January 12 and 13, 2022. *Id.*

### D. The Instant Case.

Plaintiff filed his Complaint in this case against Tesla and OnQ on May 21, 2021. ECF No. 1. Plaintiff alleges a single cause of action under the Sarbanes-Oxley Act ("SOX") (the "SOX Complaint") which he supports using much of the same factual allegations as he alleged in the Washoe County Complaint and the Arbitration Complaint. *Compare* ECF No. 1, at ¶¶ 15-32 *with* Ex. 2, at ¶¶ 9-27.

For instance, in both the SOX Complaint and the Arbitration Complaint, Plaintiff alleges that he entered into a contract to work as an Electrical Superintendent on the night shift at the Tesla Gigafactory. *Compare* ECF No. 1, at ¶ 15 *with* Ex. 6, at ¶ 9. Plaintiff further alleges that his duties at the Tesla Gigafactory "included investigating and reporting suspicious activity, including theft, occurring at the Gigafactory." *Compare* ECF No. 1, at ¶ 16 *with* Ex. 6, at ¶ 10. Additionally, Plaintiff alleges that although he witnessed and reported the theft of millions of dollars of copper wire, he was instructed to stop investigating further and was threatened with termination if he did not comply. *Compare* ECF No. 1, at ¶¶ 17-22 *with* Ex. 6, at ¶¶ 11-16. Plaintiff further alleges that in June 2018, he witnessed a few individuals loading copper wire onto a truck, reported the incident, and provided a witness statement to the Storey County Sheriff's department. *Compare* ECF No. 1, at ¶¶ 27-28 *with* Ex. 6, at ¶¶ 22-23. In retaliation for his whistleblowing, Plaintiff alleges that he was not permitted to return to work for Tesla. *Compare* ECF No. 1, at ¶¶ 29-30 *with* Ex. 6, at ¶¶ 24-25. Plaintiff also makes allegations about Tesla awarding contracts to non-union versus union

contractors in violation of Nevada law and overpaying on contracts. *Compare* ECF No. 1, at ¶¶ 23-24 *with* Ex. 6, at ¶¶ 17-18.

### III.  LEGAL ARGUMENT

The Court should immediately stay this litigation pending the outcome of arbitration in the interest of consistency and judicial economy. Indeed, a stay is appropriate under Section 3 of the Federal Arbitration Act.[2] "When the parties and issues significantly overlap between a court proceeding and an arbitration, a court may stay the entire court action. That is true even where the overlap is not complete, for example, even if some of the parties or issues are not subject to arbitration." *Neal v. Asta Funding, Inc.*, No. 13-3438 (KM) (MAH), 2013 U.S. Dist. LEXIS 170801, at *11-12 (D.N.J. Dec. 4, 2013) (citing *Crawford v. W. Jersey Health Sys. (Voorhees Div.)*, 847 F. Supp. 1232, 1240 (D.N.J. 1994) (citing *Tenneco Resins, Inc. v. Davy Intern.*, 770 F.2d 416 (5th Cir. 1985); *American Home Assur. Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961 (4th Cir. 1980); *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F. Supp. 1146 (S.D.N.Y.), *aff'd*, 486 F.2d 1394 (2d Cir. 1973); *Harman Electrical Constr. Co. v. Consolidated Engineering Co.*, 347 F. Supp. 392, 397 (D. Del. 1972)).

Even if Section 3 of the FAA's mandate does not apply, the Court has discretion to stay claims which are outside of the parties' agreements to arbitrate, but nonetheless related to the arbitrable claims. *See Winfrey v. Kmart Corp.*, 692 Fed. App'x 356, 357 (9th Cir. 2017) (unpublished) (citing *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). "Use of this power 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Anderson v. Salesforce.com, Inc.*, No. 18-cv-06712-PJH, 2018 U.S. Dist. LEXIS 215288, at *7 (N.D. Cal. Dec. 21, 2018) (citing *Landis*, 299 U.S. at 254-55); *see also Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (holding "the district

---

[2] Tesla understands that SOX claims are not arbitrable.

court did not abuse its discretion by staying the action pending receipt of the results of arbitration").

In determining whether it should exercise its discretion to grant a stay, the court should consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The Court may also weigh such interests as efficiency for its own docket. *See Winfrey*, 692 Fed. App'x at 357.

Here, a stay of this case is warranted until arbitration is complete. While the specific cause of action at issue in this case is different than those in the Washoe County Complaint and Arbitration Complaint, the SOX claim arises from the same operative facts and circumstances at issue in those proceedings. The factual allegations and issues and virtually identical. Plaintiff alleges that while working for Tesla, he reported misconduct and suspected theft to his internal supervisors. ECF No. 1, at ¶ 20; Ex. 2, at ¶ 14. Plaintiff further alleges he was terminated because he reported this potential misconduct that he uncovered. ECF No. 1, at ¶¶ 29-30; Ex. 2, at ¶¶ 24-25. Thus, Plaintiff's claim under SOX directly stems from his contractor relationship with Tesla. *See* ECF No. 1, at ¶¶ 33-48.

Plaintiff has already asserted various claims against Tesla, which pertain to this contractor relationship and which are currently being litigated in the arbitration proceeding. Indeed, following the arbitration hearing in January 2022, the arbitrator will determine, among other things, whether Plaintiff was an employee or independent contractor of Tesla; whether thefts or attempted thefts were occurring at the Gigafactory and what action was taken in response; the nature and circumstances of the work performed by Plaintiff at the Gigafactory; the substance of Plaintiff's communications with Tesla and its employees; whether Tesla terminated his services for reporting theft and other alleged misconduct; whether OnQ terminated Plaintiff's employment for reporting theft and other alleged misconduct; whether Plaintiff ever reported that Tesla was allegedly engaging in conduct amounting to unlawful violations of contracts with the State of Nevada and Unions; and what damages, if any, Plaintiff has suffered.

Further, Plaintiff will not suffer any harm if this case is stayed. In contrast, Tesla, however,

will suffer harm because instead of focusing its efforts on completing discovery, drafting dispositive and other pre-hearing motions, and preparing for the arbitration hearing, it will have to also have to engage in discovery and other related tasks in the instant case. There is no utility in the parties engaging in such efforts while at the same time entering the eve of trial (arbitration hearing).

In addition, given that the arbitration hearing is scheduled to be completed by January 13, 2021 with the arbitrator's award and decision to follow approximately 30 days thereafter, any delay in proceeding with this case is minimal. To be sure, there does not appear to be any urgency on Plaintiff's part to move this case forward. Despite filing this case on May 21, 2021, he did not serve Tesla with the Complaint and Summons until August 17, 2021. ECF No. 8. Moreover, OnQ executed a waiver of service on August 16, 2021 making their response to the Complaint due on October 15, 2021. ECF No. 7.

Other courts have held that an action should be stayed until the completion of arbitration even where non-arbitrable claims remain. *Hansen v. Musk*, No. 3:19-cv-00413-LRH-WGC, 2020 U.S. Dist. LEXIS 125573, at *22 ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)); *City of Henderson v. Span Sys., Inc.,* No. 2:12-cv-00780-JCM-NJK, at *2 (D. Nev. Mar. 15, 2013) (stating that "[c]ourts have inherent power to stay the cases before them as a matter of controlling their own docket and calendar" and "[t]he Ninth Circuit has found such a stay may be proper when arbitration proceedings are on-going").

This is especially true where "plaintiff's claims all arise from the same conduct" because "allowing the arbitration to resolve will simplify issues of law or questions of fact in future proceedings." *Hansen*, 2020 U.S. Dist. LEXIS 125573, at *22 (quoting *Anderson v. Salesforce.com, Inc.,* Case No. 18-cv-06712-PJH, 2018 WL 6728015, at *3 (N.D. Cal. Dec. 21, 2018))); *see also Wells Fargo Clearing Servs., LLC v. Foster*, No. 3:18-cv-00032-MMD-VPC, at *6 (D. Nev. Apr. 11, 2018) (staying the case pending completion of an arbitration and holding that "the result of the arbitration proceeding . . . will likely narrow if not eliminate the issues before this Court"); *Kargbo*

*v. Fedex Ground Package Systems, Inc.*, No. 2:09-CV-2152-KJD-RJJ, at *4 (D. Nev. Sep. 29, 2010) (staying a conversion claim pending completion of arbitration and holding that "[d]etermination of the wrongful termination claim will actually simplify resolution of Plaintiff's cause of action for conversion").

Indeed, courts have specifically stayed non-arbitrable claims brought under SOX for the sake of judicial efficiency. *Anderson*, 2018 WL 6728015, at *3 (N.D. Cal. Dec. 21, 2018) (staying the non-arbitrable claims because "plaintiff's claims all arise from the same conduct and because allowing the arbitration to resolve will simplify issues of law or questions of fact in future proceedings."); *see also Hansen*, 2020 U.S. Dist. LEXIS 125573, at *22-23 (staying a SOX claim pending completion of an arbitration of plaintiff's other claims, as they all arise from the same conduct). That is precisely the case here.

Accordingly, this case should be stayed pending completion of arbitration.

### IV.   CONCLUSION

For each and all of the reasons stated above, Defendant Tesla Motors, Inc. respectfully requests the Court grant its Motion and stay these proceedings pending completion of arbitration.

DATED this 1st day of October, 2021.

JACKSON LEWIS P.C.

*/s/ Joshua A. Sliker*_____
JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101

*Attorneys for Defendant*
*Tesla Motors, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Jackson Lewis P.C. and that on this 1st day of October, 2021, I caused to be served a true and correct copy of the above and foregoing **DEFENDANT TESLA MOTORS, INC.'S MOTION TO STAY CASE PENDING COMPLETION OF ARBITRATION**, via the U.S. District Court, District of Nevada's CM/ECF electronic filing and service system, to:

Michael A. DiRenzo
WATKINS & LETOFSKY, LLP
8935 S. Pecos Road, Ste. 22A
Henderson, Nevada 89074

*Attorney for Plaintiff*
*Lynn Thompson*

                                                          */s/ Joshua A. Sliker*
                                                          Employee of Jackson Lewis P.C.

4814-5167-6413, v. 2

JACKSON LEWIS P.C
LAS VEGAS